UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN ROBINSON,

            Petitioner,

  -against-

SUPERINTENDENT, GREEN HAVEN
CORRECTIONAL FACILITY,

            Respondent.
----------------------------------------------------------------X

REPORT & RECOMMENDATION
21 CV 7218 (DG)(LB)

**BLOOM, United States Magistrate Judge:**

    Petitioner John Robinson files this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2019 conviction of second-degree burglary in New York Supreme Court, Kings County. Pet., ECF No. 1 at 1-2.[1] The Honorable Diane Gujarati referred this petition to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

## BACKGROUND

**I.    The Underlying Crimes**

    According to the evidence adduced at trial,[2] at approximately 4:00 a.m. on October 26, 2017, petitioner John Robinson burglarized the basement apartment of Evadnie and Anthony Dorson at 1108 Willmohr Street in Brooklyn, New York. Trial Transcript ("T.T."), ECF No. 7-1 at 250-53, 506. At 3:55 a.m. that day, Mr. and Ms. Dorson left their home to drive Mr. Dorson to work. Id. at 252. As the Dorsons walked to their car in the parking lot outside their home, they saw

---

[1] For ease of reference, all citations are to the ECF pagination of the state court record and the parties' briefs.
[2] Petitioner was tried by jury in New York Supreme Court, Kings County between March 25 and March 28, 2019 before the Honorable Deborah A. Dowling. The trial transcript begins at ECF No. 7-1 page 212 and concludes at page 509.

petitioner standing between two cars. Id. at 254-56. Seeing someone in the lot so early that morning raised the Dorsons' suspicions, so they drove around the block and back to their house. Id. at 256-57. They no longer saw petitioner, so they continued to Mr. Dorson's place of employment. Id. at 257.

After dropping Mr. Dorson at work, Ms. Dorson returned home. Id. at 258. She saw petitioner in her apartment through the window as she went down the outside stairs to her front door. Id. at 258-59. She ran back up the stairs and called 911 and Mr. Dorson. Id. at 260, 267. Two officers from the New York City Police Department arrived. When the officers opened the door to the Dorsons' apartment, petitioner was behind the door holding brown and red suitcases. Id. at 372-76.

Officer Dylan McCann opened the brown suitcase and found Tide pods, towels, sneakers, two bottles of liquor, a laptop, a Michael Kors handbag, and a Tory Burch wallet. Id. at 377. The wallet contained six or seven credit and debit cards in Ms. Dorson's name. Id. Officer McCann later opened the red suitcase, which was "bursting at the seams." Id. at 380. Petitioner was placed under arrest and escorted to the 67th Precinct. Id. at 381-82.

The Dorsons identified their belongings in the red and brown suitcases and later found that several other items were missing from their apartment, including a smaller suitcase, their wedding bands, another laptop, and two watches. Id. at 269-73, 382-85. The Dorsons' property in the suitcases was returned to them and although the officers canvassed the surrounding areas for the missing items, they were never found. Id. at 382-85.

## II. Petitioner's Trial

On March 20, 2019, petitioner was offered a plea bargain: he would plead guilty to burglary in the second degree in exchange for a promised sentence of seven years. Pre-Trial Proceeding Tr.,

ECF No. 7-2 at 67. Petitioner rejected the offer. Id. at 68. A jury trial was held from March 25 to March 28, 2019, in Supreme Court, Kings County, before the Honorable Deborah A. Dowling.

Following the presentation of evidence, the prosecutor began his summation with "[t]here's a strange man in the house. Every husband's nightmare. You get that phone call from your wife. But that wasn't a nightmare, ladies and gentlemen, for Anthony Dorson. That's what happened to him . . . ." T.T., ECF No 7-1 at 445-46. During his summation, the prosecutor stated "while Brooklyn was sleeping, [petitioner] was plotting. He was standing in the shadows. He was waiting for his moment, for his opportunity," id. at 446, "that is the first time that [the Dorsons] encounter John Robinson, the person who turned their lives upside down," id. at 447, and "what does she see folks? This man violating the sanctity of her home." Id. at 449. In closing, the prosecutor asked the jury to "[h]old [petitioner] accountable for being the Dorsons' nightmare." Id. at 460.

The jury found petitioner guilty of burglary in the second degree. Id. at 506-07. In his pre-sentencing interview, petitioner claimed that he had been in a relationship with Ms. Dorson that had ended that day, and that he only went to her home to retrieve his belongings. Pre-Sentence Report, ECF No. 7-1 at 513. Petitioner was sentenced to twelve years in prison and five years of post-release supervision. Sentencing Tr., ECF No. 7-1 at 526.

### III. Procedural History

Petitioner appealed his judgment of conviction to the Appellate Division, Second Department on two main grounds: (1) "the prosecutor's pervasive, calculated and egregious attempts to inflame the jury in his opening and closing statements, as well in his questioning of the witnesses, poisoned the deliberation process and deprived appellant of his due process right to a fair trial"; and (2) "appellant's sentence totaling 12 years in prison plus 5 years of post-release supervision should be reduced in the interest of justice since he had the potential to become a

productive member of society." App. Div. Br. for Def.-Appellant, ECF No. 7-1 at 531-32. Petitioner argued in the alternative that "the large differential between the [plea bargain] offer and the sentence suggests that appellant was being punished for exercising his right to go to trial." Id. at 557. He also argued that his trial counsel's failure to object to the prosecutorial misconduct "constituted ineffective assistance of counsel under both the United States and New York Constitutions." Id. at 554.

The Appellate Division affirmed petitioner's conviction on June 23, 2021. People v. Robinson, 195 A.D.3d 950 (N.Y. App. Div. 2021). Petitioner sought leave to appeal to the New York Court of Appeals, and his application was denied. People v. Robinson, 37 N.Y.3d 995 (2021) (Fahey, J.).

### IV. Instant Petition

Petitioner timely filed this *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pet., ECF No. 1. Petitioner raises three grounds for habeas review: (1) trial counsel was ineffective for failing to prepare a defense based on petitioner's alleged romantic relationship with Ms. Dorson, (2) trial counsel was ineffective for failing to object to prosecutorial misconduct, and (3) petitioner's sentence vindictively punished him for exercising his right to a trial. Pet., ECF No. 1 at 5-7.

## DISCUSSION

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA,

if the claim "was adjudicated on the merits in State court proceedings," the reviewing court may not grant a habeas writ unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet' and 'highly deferential standard,'" and review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted). Moreover, a state court's factual findings "shall be presumed to be correct unless the petitioner rebuts that presumption by clear and convincing evidence." Fernandez v. Capra, 916 F.3d 215, 221 n.1 (2d Cir. 2019) (citing § 2254(e)(1)) (internal quotation marks omitted).

A state court decision is "contrary to" clearly established Federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at a result opposite to the one reached by the Supreme Court." Evans v. Fisher, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established Federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Court cautions, however, "that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in original); see also Grayton v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable.") A federal habeas court may

5

only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

## II.     Exhaustion and Procedural Default

Federal habeas review is available only for claims that meet two criteria. First, the petitioner must "exhaust[] the remedies available in the courts of the State" for a particular Federal claim. 28 U.S.C. § 2254(b)(1)(A). Second, federal courts cannot review a claim that the state court resolved on an independent and adequate state ground; such claims are considered "procedurally barred." Cox v. Miller, 296 F.3d 89, 99 (2d Cir. 2002).

### A. Exhaustion

Before reviewing the merits of a habeas claim, the Court must determine whether petitioner has exhausted his state court remedies for that claim. 28 U.S.C. § 2254(b)(1); see also Davila v. Davis, 582 U.S. 521, 527 (2017) ("The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'" (citation omitted)). To exhaust state court remedies, petitioner must fairly present the claim to a state court. Baldwin v. Reese, 541 U.S. 27, 29 (2004). Petitioner fairly presents a claim only if he "has informed the state court of both the factual and the legal premises of the claim he asserts in federal court," such that the state courts were "fairly alerted" to the claim's federal nature. Bierenbaum v. Graham, 607 F.3d 36, 47, 49 (2d Cir. 2010) (citation omitted); see also Baldwin, 541 U.S. at 32 ("A litigant . . . can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). A claim has not been fairly

presented "if discovery of that claim requires the [state] court to 'read beyond a petition or a brief (or a similar document)' and conduct its own review of proceedings below." Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009) (quoting Baldwin, 541 U.S. at 32)).

In New York, fair presentation of a claim to the Court of Appeals, the state's highest court, requires a petitioner to seek review of that claim by the Court of Appeals; a petitioner may do so in a concise letter application seeking review of all issues raised in his Appellate Division brief. Galdamez v. Keane, 394 F.3d 68, 76-77 (2d Cir. 2005) (Sotomayor, J.).

### B. Procedural Default

Claims are barred from federal habeas review if a state court rejects the claim on a state law ground that is "independent of the federal question and adequate to support the judgment," Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (citation omitted), because federal courts will not review state court decisions that rest on independent and adequate state law grounds. Lee v. Kemna, 534 U.S. 362, 375 (2002). "The rule applies with equal force whether the state-law ground is substantive or procedural." Id.; see also Whitley v. Ercole, 642 F.3d 278, 285 (2d Cir. 2011). Accordingly, a federal court may not grant relief based on claims that were rejected on state law procedural grounds, such as when a state court finds the claim to be unpreserved for appellate review, or procedurally defaulted. See, e.g., Zarvela v. Artuz, 364 F.3d 415, 418-19 (2d Cir. 2004). A state law ground of decision forecloses habeas review of the federal claim if the state law is "'firmly established and regularly followed' in the specific circumstances presented in the case." Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003).

This bar applies "even where the state court has also ruled in the alternative on the merits of the federal claim." Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)); Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state

court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment . . . ."). Nevertheless, petitioner may obtain federal habeas review of a procedurally defaulted claim if petitioner demonstrates either "cause for the default and prejudice" or that "failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman v. Thompson, 501 U.S. 722, 748-50 (1991)).

### III. Petitioner's Claims

The Court liberally construes the *pro se* petition "to raise the strongest arguments it suggests," but petitioner is "not exempt from the applicable procedural and substantive rules." Mejia v. Superintendent, Elmira Corr. Facility, 702 F. Supp. 3d 83, 93 (E.D.N.Y. 2023).

### A. Prosecutorial Misconduct

Petitioner claims that the prosecutor's misconduct during opening and closing statements deprived him of a fair trial in violation of the Due Process clause of the Fourteenth Amendment. Pet., ECF No. 1 at 5-6. He also claims that his trial counsel was ineffective for failing to object to the prosecutor's conduct, violating petitioner's Sixth Amendment right to effective counsel. Id. at 6. Petitioner exhausted these claims by presenting them to the Appellate Division and the Court of Appeals. App. Div. Br. for Def.-Appellant, ECF No. 7-1 at 546-47, 554-55.

The Appellate Division found that the prosecutorial misconduct claim was unpreserved for appellate review, citing New York's contemporaneous objection rule. Robinson, 195 A.D.3d at 951. This procedural default forecloses habeas review of this claim. The contemporaneous objection rule is "a firmly established and regularly followed New York procedural rule" barring review of alleged prosecutorial misconduct when defense counsel failed to object at trial. Upson

v. Capra, No. 22-CV-1705 (PKC), 2023 WL 5585986, at *8 (E.D.N.Y. Aug. 29, 2023) (quoting Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011)).[3]

Even if this claim were not procedurally barred,[4] it would not be grounds for habeas relief. The Appellate Division ruled that "[i]n any event," the prosecutorial misconduct claim was meritless because the prosecutor's "remarks generally were fair comment on the evidence and reasonable inferences to be drawn therefrom." Robinson, 195 A.D.3d at 951. This alternative holding is entitled to AEDPA deference. See Zarvela, 364 F.3d at 417. The state court's holding is neither contrary to nor an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts.

Prosecutors have broad latitude in closing arguments. See United States v. Casamento, 887 F.2d 1141, 1189 (2d Cir. 1989). Even where a prosecutor's summation comments are improper or offensive, habeas relief is not warranted unless the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 180-81 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). In other words, a petitioner must show "that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994). In determining whether the prosecutor's comments rise to the level of a violation of petitioner's right to due process, the Court considers: (1) the severity of the misconduct; (2) the nature of the curative measures taken to remedy the prejudice, if any; and (3) the certainty of the conviction absent the improper conduct. Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998). It is not misconduct for a prosecutor to

---

[3] The Clerk of Court is respectfully directed to send petitioner the attached copies of all unreported cases cited herein.
[4] Petitioner's argument that his trial counsel was ineffective for failing to object to the prosecutor's conduct does not constitute cause for his procedural default. See infra Part III.B.

9

use "colorful adjectives[] in summation." United States v. Rivera, 971 F.2d 876, 884 (2d Cir. 1992).

The prosecutor's conduct did not deny petitioner's right to due process. The prosecutor's description of petitioner as the Dorsons' "worst nightmare" is not the kind of "egregious misconduct," Donnelly, 416 U.S. at 647, that gives rise to a constitutional violation. See, e.g., Dell v. Ercole, No. 06-CV-1724, 2009 WL 605188, at *9 (E.D.N.Y. Mar. 6, 2009) (finding that prosecutor's description of defendant in burglary case as "everyone's worst nightmare" was not "outside the bounds of zealous argument"). The trial judge's instructions cured any potential prejudice resulting from the prosecutor's conduct. See, e.g., T.T., ECF No. 7-1 at 463-65 (instructing the jury to base its "verdict on the evidence alone," not "sympathy or other considerations," and that the "summations of counsel are not evidence"). Finally, based on the evidence presented at trial, the certainty of petitioner's conviction was high absent the prosecutor's comments. Officer McCann apprehended petitioner about to leave the Dorsons' residence with two suitcases full of the Dorsons' belongings, T.T., ECF No. 7-1 at 372-76, and Ms. Dorson testified that petitioner did not have permission to be in her home. Id. at 316-17; see also Robinson, 195 A.D.3d at 951 (finding "overwhelming evidence" of petitioner's guilt).

### B. Ineffective Assistance of Counsel

Petitioner raises an ineffective assistance of counsel claim as cause for the procedural default of his prosecutorial misconduct claim. Pet., ECF No. 1 at 5-6. Petitioner can only rely on this claim as "cause" if petitioner raised ineffective assistance of counsel as a separate claim in state court. Edwards v. Carpenter, 529 U.S. 446, 453 (2000).

Petitioner properly exhausted his claim of ineffective assistance of counsel. App. Div. Br. for Def.-Appellant, ECF No. 7-1 at 554. However, the Appellate Division rejected the claim on

10

the merits, finding that defense counsel's failure to object to the prosecutor's statements "did not constitute ineffective assistance of counsel" because there "can be no deprivation of effective assistance of counsel arising from the failure to make a motion or argument that had little or no chance of success." Robinson, 195 A.D.3d at 952 (quoting People v. King, 144 A.D.3d 1176, 1177 (N.Y. App. Div. 2016)). The Appellate Division further found "that defense counsel provided meaningful representation to the defendant." Id.

The Appellate Division's merits holding is neither contrary to nor an unreasonable application of clearly established Federal law. Under the Sixth Amendment, defendants are entitled to assistance of counsel that does not fall "below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). To establish a claim of ineffective assistance of counsel, petitioner also "must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Failure to raise objections that are meritless or would have been overruled at trial is not ineffective assistance of counsel. Black v. Rock, 103 F. Supp. 3d 305, 321 (E.D.N.Y. 2015). Furthermore, counsel need not necessarily raise every nonfrivolous claim available. Jones v. Barnes, 463 U.S. 745, 754 (1983). In reviewing a claim of ineffective assistance of counsel, a habeas court applies the "highly deferential" standard set forth in Strickland together with the standard set forth in 28 U.S.C. § 2254(d), and consequently, must be "doubly deferential" to the State court's determination of that claim. Knowles v. Mirzayance, 556 U.S. 111, 123-24 (2009).

Petitioner's ineffective assistance of counsel claim does not meet the "doubly deferential" standard for habeas relief. Petitioner does not demonstrate that counsel's performance fell below an objective standard of reasonableness by failing to object to the prosecutor's conduct. As

11

discussed above in Part III.A, had petitioner's defense counsel objected to the prosecutor's statements in the opening and summation, those objections would likely have been overruled. Even if any objections may have been sustained, counsel's failure to raise such objections did not render petitioner's counsel ineffective. The Appellate Division found "that defense counsel provided meaningful representation" to petitioner. Robinson, 195 A.D.3d at 952.

Separately, petitioner argues for the first time that his trial counsel was ineffective for failing to prepare a defense based on petitioner's alleged romantic relationship with Evadnie Dorson. Pet., ECF No. 1 at 5. Petitioner states that his counsel was "obligated to disclose this alleged fact" at trial to impeach Ms. Dorson's credibility as a witness and to counter the prosecution's depiction of petitioner as an unknown, strange man. Id.

This claim is unexhausted. As discussed above, petitioner raised one claim of ineffective assistance of counsel on direct appeal, based on counsel's failure to object to the prosecutor's alleged misconduct. Petitioner did not raise a claim regarding his counsel's failure to prepare a defense. See Moses v. Collado, No. 19-CV-0177 (LTS)(GWG), 2024 WL 3824066, at *2 (S.D.N.Y. Aug. 15, 2024) (analyzing exhaustion of two ineffective assistance of counsel claims separately). Petitioner failed to exhaust his state court remedies for this ineffective assistance of counsel claim.[5] Therefore, this claim is barred from habeas review.

---

[5] As respondent concedes, petitioner could move in state court to vacate his judgment under New York Criminal Procedure Law § 440.10 because this claim of ineffective assistance relies on evidence outside the trial and pretrial record. ECF No. 7 at 17-18; cf. Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003) (finding claim procedurally defaulted because its basis "was particularly well-established in the trial record" and thus should have been raised on direct appeal). The record is not clear what petitioner told his counsel about his alleged relationship with Ms. Dorson, nor what strategic calculations his counsel made. However, in a pre-trial hearing, defense counsel stated his intention to inquire into "whether [Ms. Dorson] knows my client, whether they've had a relationship," and asked the trial judge whether that would open the door to the prosecution admitting into evidence petitioner's two recorded phone calls made while he was incarcerated at Rikers Island. Pre-Trial Proceeding Tr., ECF No. 7-1 at 233. In those phone calls with petitioner's "friend or [his] girlfriend," petitioner offered other explanations for his actions, stating both that he was in the Dorsons' home because he was homeless and because he was going to his aunt's house. Id. at 39. The judge told defense counsel that if counsel inquired persistently into Ms. Dorson's relationship with petitioner, the prosecution would be allowed to introduce evidence of the phone calls. Id. at 233-34. On cross examination of Ms. Dorson, defense counsel asked if she "had a friendship or relationship" with petitioner, and Ms.

### C. Vindictive Sentence

Finally, petitioner argues that his sentence was vindictively increased in retaliation for his decision to reject a plea deal and exercise his constitutional right to trial by jury, "after informing his defense attorney about an alleged[] prior romantic relationship" with Ms. Dorson. Pet., ECF No. 1 at 7. To the extent that the petition may be construed to claim that the trial judge considered any improper factors when sentencing petitioner, such claim would be procedurally barred because it was not raised in state court. Moreover, it would not be cognizable as a Federal claim. It is well settled that "an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law. 'No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.'" Pina v. Kuhlman, 239 F. Supp. 2d 285, 288 (E.D.N.Y. 2003) (internal citation omitted) (quoting White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992)).

Petitioner did, however, exhaust the claim that his sentence was vindictively imposed for exercising his right to a trial. Petitioner raised this claim in his brief to the Appellate Division, albeit in an alternative argument. App. Div. Br. for Def.-Appellant, ECF No. 7-1 at 557 ("Moreover, the large differential between the offer and the sentence suggests that appellant was being punished for exercising his right to go to trial."). While petitioner's Appellate Division brief did not explicitly reference Federal law, petitioner fairly presented a Federal claim by alleging a fact pattern that is "within the mainstream of constitutional litigation." Cox, 296 F.3d at 99 (quoting Daye v. Attorney General, 696 F.2d 186, 194 (2d Cir. 1982)); see Williford v.

---

Dorson stated that she did not. T.T., ECF No. 7-1 at 321-22. Based on the record before the Court, it appears that defense counsel made no further inquiry as he did not want to open the door to admit into evidence petitioner's contradictory statements made in recorded phone calls from jail. As such, even if this claim were exhausted, it would not be grounds for habeas relief. Petitioner has not overcome the presumption that his trial counsel's conduct "might be considered sound trial strategy" and moreover, there is no "reasonable probability" that the result of petitioner's trial would have been different if petitioner's counsel had pursued this defense. See Strickland, 466 U.S. at 689, 694 (citation omitted).

Christianson, No. 15-C-2664, 2016 WL 4798934, at *9 (N.D. Ill. Sept. 14, 2016) (collecting cases from various circuits and concluding that vindictive sentencing claims alleging retaliation for exercising a constitutional right "are within the mainstream of constitutional litigation").

Nevertheless, the claim is procedurally barred from habeas review. The Appellate Division found the claim unpreserved because petitioner did not object on these grounds at sentencing. Robinson, 195 A.D.3d at 952. Again, reliance on New York's contemporaneous objection rule is an independent and adequate state law ground that forecloses Federal habeas review. Romero v. Sheahan, No. 13-CV-4048 (SJF), 2016 WL 3460372, at *9 (E.D.N.Y. June 21, 2016) (finding vindictive sentencing claim procedurally barred because petitioner failed to preserve the issue at sentencing). Petitioner asserts no cause for his failure to raise this objection and does not show that barring this ground would result in a miscarriage of justice.

Even if petitioner's claim were not procedurally barred, it would not be the basis for habeas relief. The Appellate Division, in its alternative merits holding, found that "the record reveals no retaliation or vindictiveness . . . for [petitioner's] electing to proceed to trial." Robinson, 195 A.D.3d at 952. This is neither contrary to nor an unreasonable application of clearly established Federal law. Under the Due Process clause, greater punishment may not be imposed "because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal." Izaguirre v. Lee, 856 F. Supp. 2d 551, 572 (E.D.N.Y. 2012). The Supreme Court established a presumption of vindictiveness in North Carolina v. Pearce, 395 U.S. 711, 725-26 (1969), stating that when "a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." Id. at 726. In Alabama v. Smith, 490 U.S. 794, 798-99 (1989), the Supreme Court narrowed Pearce's applicability, holding that where an increased sentence is imposed after retrial, Pearce's presumption of vindictiveness only arises if "there is a

'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." Smith, 490 U.S. 794 at 799 (citation omitted); see also Somerville v. Hunt, 695 F.3d 218, 223 (2d Cir. 2012).

In Izaguirre, the district court found Pearce's presumption of vindictiveness applicable when the trial judge imposed the statutory maximum sentence in retaliation for the petitioner refusing to plead guilty. Id. at 572-80. Before trial, the judge "plainly told Petitioner" that he would receive a sentence of 25 years rather than the 10 years offered in the plea bargain, and then imposed that sentence without stating "sufficient reasons" for doing so. Id. at 574, 577. The district court, however, emphasized that it did not find vindictiveness "simply because the post-trial sentence exceeded a previous plea offer." Id. at 577; see also Bordenkircher v. Hayes, 434 U.S. 357, 362-63 (1978) ("[I]n the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.").

In petitioner's case, the Pearce presumption is inapplicable because as the Appellate Division found, the trial judge did not behave vindictively. Unlike in Izaguirre, the judge in petitioner's case did not predetermine petitioner's sentence: before trial, the judge stated that if petitioner were found guilty, "he still certainly would face significantly more jail time" than if he pled guilty. Pre-Trial Proceeding Tr., ECF No. 7-1 at 68. At sentencing, the judge stated adequate reasons for imposing a longer sentence than petitioner was offered in his plea deal. Sent. Tr., ECF No. 7-1 at 525-26.

## CONCLUSION

Accordingly, it is respectfully recommended that petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 should be denied.[6] As petitioner has not made a substantial

---

[6] The petition should be denied even though petitioner's second claim of ineffective assistance of counsel for failing to prepare a defense is unexhausted. See supra Part III.B; 28 U.S.C. § 2254(b)(2) (unexhausted claim can be denied

showing of the denial of any constitutional right, no certificate of appealability should be issued. 28 U.S.C. § 2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability). It is further recommended for purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

### FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: October 21, 2024
       Brooklyn, New York

---

on the merits); see also Turner v. Artuz, 262 F.3d 118, 122 (2d Cir. 2001). Any subsequent habeas petition would be barred by the AEDPA's one-year statute of limitations, as petitioner's direct review in state court concluded in 2021. 28 U.S.C. § 2244(d). Nevertheless, dismissal of this petition in its entirety would not "unreasonably impair the petitioner's right to obtain federal relief" because, as discussed above, none of petitioner's exhausted claims are grounds for habeas relief. Cf. Rhines v. Weber, 544 U.S. 269, 278 (2005). It would be inappropriate to stay the instant petition because petitioner has not shown cause for his failure to raise his unexhausted claim in state court and the unexhausted claim does not appear to be "potentially meritorious." Id. Finally, petitioner never requested a stay.